UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-21136-Civ-COOKE/BANDSTRA

SOUTHERN WINE AND SPIRITS
OF AMERICA, INC.

    Plaintiff

vs.

THEODORE SIMPKINS,

    Defendant

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER is before me on the Plaintiff's Motion for Preliminary Injunction.  I have reviewed the Parties' arguments, the record, and the relevant legal authorities.  For the reasons explained in the order, the Plaintiff's Motion for Preliminary Injunction is denied.

### I. BACKGROUND

This case is about the reasonableness of a restrictive covenant not to compete in an employment setting and whether that covenant should be enforced by preliminary injunction until the case is tried on the merits.  The Plaintiff, Southern Wine & Spirits of America, Inc., alleges that the Defendant, Theodore Simpkins, has breached a restrictive covenant not to compete and is now seeking a preliminary injunction to enforce that covenant.

Southern Wine is a wholesale distributor of wine, and other alcoholic and non-alcoholic products.  It is one of the Nation's largest wholesale distributors of wine, spirits and beer, operating in thirty states including Florida and California. Theodore Simpkins is a former high-ranking executive of Southern Wine.  Mr. Simpkins worked for Southern Wine for almost 40 years.

In 1983, Southern Wine relocated Mr. Simpkins from Florida to California to help grow the California division of the business. He has lived in California since then. From 2005 to 2010 Mr. Simpkins received approximately $39 million in salary and bonus compensation averaging approximately $7.8 million per year. In 2008, Mr. Simpkins had less than two years remaining on his existing employment contract. Concerned for his future, he asked Southern Wine's owners to extend his contract for five more years with the same economic terms. The owners agreed to the extension but would not give the same economic terms. Instead of continuing to pay him a guaranteed annual bonus, the agreement was changed to allow for a bonus that would be paid only at the discretion of the owners.

The new agreement also contained an expanded restrictive covenant providing that, for five years after the termination of the agreement, Mr. Simpkins would not participate in any "Restricted Business Activity," as defined in the agreement, in any part of the United States or its territories or possessions. "Restricted Business Activities" ranged from wholesale sale of alcoholic and non-alcoholic beverages to soliciting away Southern Wine employees. The contract was presented as a take-it-or-leave-it option. Before signing the agreement, Mr. Simpkins consulted with an attorney who he believed to be "independent counsel," but who was, in fact, Southern Wine's own labor and employment attorney. Nonetheless, on March 1, 2008, acting upon counsel's advice, he signed the new employment agreement.

On April 5, 2010, without prior notice to the Plaintiff, Mr. Simpkins terminated his employment at Southern Wine and, on the next day, joined Young's Market Company in an executive level position. Young's Market is one of Southern Wine's top competitors in California. Southern Wine alleges that Mr. Simpkins breached the restrictive covenant when he joined Young's Market and, by either indirect or direct means, solicited away Southern Wine employees. Southern

Wine further alleges that he will continue to breach the agreement to its irreparable detriment if he is not ordered to stop. Southern Wine now asks this Court to issue a preliminary injunction to preclude Mr. Simpkins' activities in this regard at least until the time of trial in April 2011. In opposition, Mr. Simpkins asserts that his employment with Young's Market is not in breach of his agreement, that he has not solicited employees or vendors away from Southern Wine, and that the restrictive covenant itself is presumptively unreasonable. He further maintains that enforcement of the restrictive covenant, either by way of preliminary injunction or final order, will effectively end his ability to work in the only career has known for the past 40 years and force him into an early, and unwanted, retirement.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion.'" *In re Jotan*, 229 B.R. 218 (Bankr. M.D. Fla. Nov. 25,1998) citing *McDonald's v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). The grant or denial of such an extraordinary remedy is a decision within the sole discretion of the district court. *Carillon Importers, Ltd*. v. *Frank Pesce Int'l Group, Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). To meet the burden of persuasion for granting a preliminary injunction the movant must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not disserve the public interest. *Id*.

## III. ANALYSIS

*A.     Choice of Law*

The employment agreement at issue contains an "applicable law" clause, selecting Florida law to govern the terms of the agreement.  Mr. Simpkins has contested the enforceability of that clause on the grounds that the contract was made in California, wholly performed in California, and that California has a strong public policy *against* the enforcement of restrictive non-compete covenants.  On November 10, 2010, pursuant to Plaintiff's motion to stay, the Superior Court of California for Alameda ruled that the agreement's forum selection clause is reasonable and should be enforced.  The effect of this ruling is that the State of California has determined that it does not have an interest in enforcing its public policy against the enforcement of restrictive non-compete covenants as it pertains to this non-compete agreement.  Accordingly, the agreement's choice of law provision will be honored.

*B.     Likelihood of Success On the Merits*

"A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated.  It is not enough that a merely colorable claim is advanced." *City of Jacksonville v. Naegele Outdoor Adver. Co.*, 634 So. 2d 750, 753 (Fla. Dist. Ct. App. 1994).  Under Florida law, an employer seeking to enforce a restrictive covenant must prove (1) the existence of one or more legitimate business interests justifying the covenant and (2) that the contractually specified restraint is reasonably necessary to protect the established business interest of the employer.  Fla. Stat. § 542.335(1)(b) (2010).  The term "legitimate business interests" includes, but is not limited to: valuable confidential business information, substantial relationships with prospective or existing customers or clients, and extraordinary or specialized training.  *Id*.

*1.  Confidential Business Information*

"Information that is commonly known in the industry and not unique to the allegedly injured party is not confidential and is not entitled to protection." *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d. 1299, 1304 (S.D. Fla. 2004).  However, "when an employee has access to confidential business information crucial to the success of an employer's business, that employer has a strong interest in enforcing a covenant not to compete." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234 (11th Cir. 2009).

There is a substantial likelihood that Southern Wine will succeed in showing that it has a legitimate business interest in protecting the confidential business information that Mr. Simpkins had access to while at Southern Wine.  In *Proudfoot* the court found the plaintiff to have a legitimate business interest in its confidential business information justifying enforcing a covenant not to compete.  There, the confidential information included information about the employer's clients, its general operations, pricing information, training materials, and methods for providing its services.  It was not decisive whether the employee had ever used the information or intentionally breached the agreement's confidentiality clause.  In fact, the court called it a mistake to assume that an employer's interest in its confidential information justifies enforcement of a non-compete covenant only if the employer can establish that the employee breached the confidentiality clause of the agreement.  *Proudfoot*, 576 F.3d at 1234 (11th Cir. 2009).  The court explained that it was sufficient that the former employee, by working with a competitor, endangered the confidential information he received while working with his former employer.  *Id*.

While at Southern Wine Mr. Simpkins had access to information of much the same type as that described in *Proudfoot*.  He had access to Southern Wine's personnel files and staffing strategies, annual vision and strategy plans, pricing information, supplier agreements and marketing

5

strategies, and method of business requirements.  He also attended meetings that were reserved for only the most senior level managers at Southern Wine.  Moreover, the CEO of Young's Market admitted that the internal financial statements to which Mr. Simpkins had access while at Southern Wine are confidential and would confer a competitive advantage onto another competitor.  While it may be true that such information in the wholesale alcohol industry becomes stale after two to six months, the weight of current authority and the possibility of Mr. Simpkins could use the information to give his new employer a possible unfair advantage presents a substantial likelihood that Southern Wine will be able to establish a legitimate business interest in the confidential information to which he had access.

### 2.  *Substantial Relationships With Existing Customers*

Florida Statute section 542.335(1)(b)(3) provides that proof of a legitimate business interest in substantial relationships with specific prospective or existing customers justifies a restrictive covenant.  This portion of the statute also states that what can constitute a legitimate business interest is not limited to those factors enumerated within the statute.  Fla. Stat. § 542.335(1)(b) (2010).  Southern Wine, relying on the "is not limited to" language of section 542.335(1)(b), alleges that it has substantial relationships with specific prospective and existing suppliers (instead of customers) and that its relationships with its suppliers is a legitimate business interest that justifies the restrictive covenant.  Stated plainly, Southern Wine seeks to persuade this Court that section 542.335(1)(b) of the statute contemplates prospective and existing relationships with *suppliers*.  Southern Wine notes the exclusivity of its relationships with its suppliers and the substantial sums of money it has invested to cultivate those relationships.  Southern Wine cites *In re Jotan*, 229 B.R. 218 (Bankr. M.D. Fla. Nov. 25, 1998) in support of this argument.  I find the exclusivity and investment arguments to be unpersuasive and citation to *In re Jotan* inapplicable.  The case of

*Concrete Surface Innovations, Inc. v. McCarty*, No. 10-568, 2010 WL 1930971 (M.D. Fla. May 13, 2010) is much more to the point.

In *Concrete Surface* the plaintiff alleged that it had substantial relationships with two suppliers that warranted protection as legitimate business interests. There, the plaintiff, a company that specialized in "concrete repair and finishing . . . and use of polyurea and epoxy products for caulking" had contracts to pour concrete for Wal-Mart and Sam's Club stores. Wal-Mart and Sam's Club would not do business with the plaintiff unless it purchased epoxy products exclusively from two manufacturers. Since the relationships were exclusive, the plaintiff contended that they were substantial relationships under the meaning of Florida Statute 542.335(1)(b)(3). The court disagreed. Instead, it found that the epoxy manufacturers were "vendors of a product that is necessary for some jobs to be awarded but they are not akin to 'clients' or 'customers.'" *Concrete Surface,* 2010 WL 1930971 at *6. The court went further to note that the plaintiff was actually the customer of the epoxy manufacturers, not the other way around.

While that decision is not binding here it is, however, illustrative of what I believe to be a proper interpretation of the statute. Southern Wine, as a wholesale distributor, relies on exclusive contracts to buy from its vendors so that it may in turn sell products to retail outlets. This is the same business model that was present in *Concrete Surface*. Just as in *Concrete Surface*, Southern Wine (and the retail outlets it sells to) is the customer and its suppliers are the "vendors of products necessary for some jobs to be awarded." *See Concrete Surface Innovations, Inc.,* 2010 WL 1930971 at *6. Southern Wine's suppliers are not akin to customers or clients. Therefore, it does appear substantially likely, at this time, that Southern Wine will be able to establish a legitimate business interest in its relationships with its suppliers.

### 3. Extraordinary Employee Training

To constitute extraordinary employee training under Florida law the "training must go beyond what is usual, regular, common, or customary in the industry in which the employee is employed." *Hapney v. Cent. Garage*, 579 So. 2d 127, 132 (Fla. Dist. Ct. App. 1991). In its motion, Southern Wine conflates the distinction between extraordinary training and the extraordinary investments it made to train Mr. Simpkins. Instead of detailing the extraordinary quality of its training, Southern Wine emphasizes the extraordinary quantity of money it spent to train the Defendant to become a successful salesman and executive. The emphasis of Southern Wine's analysis is misplaced. The statute requires evidence of how unusual, uncommon, or distinct the quality of training that Simpkins received was in comparison to the standard training for the industry. A demonstration that an employee's training was extraordinary necessarily requires a discussion of how different from the norm the training actually was. Southern Wine has provided no such discussion.

Since Southern Wine does not properly address the issue of extraordinary training within the ambit of Florida Statute § 542.335(1)(b)(5) it is not substantially likely that it will be able to demonstrate a legitimate business interest in its employee training.

### 4. Reasonable Necessity of the Covenant

To be enforceable, restrictive covenants must be reasonable with regard to time, area and line of business. Fla. Stat. § 542.335(1) (2010). A court shall presume reasonable in time any restraint six months or less in duration and shall presume unreasonable in time any restraint more than two years in duration. Fla. Stat. § 542.335(1)(d) (2010). Where no evidence rebuts this presumption, it is error to enter an injunction in excess of two years. *Flickenger v. R.J. Fitzgerald & Co.*, 732 So. 2d 33, 34 (Fla. Dist. Ct. App. 1999). Once an employer has established a prima

facie showing of the reasonableness of the restraint, "the burden of proof shifts to the employee to show that the contractually specified restraint is overbroad, overlong, or otherwise unnecessary to protect the established business interest." *Proudfoot*, 576 F.3d at 1231 (11th Cir. 2009).

Southern Wine argues that the restrictive covenant is reasonable as to time, area and line of business. To make a successful showing of reasonableness as to time, section 542.335(1)(d) of the statute requires Southern Wine to offer evidence to rebut the presumption that the five-year time restriction is unreasonable. It is not likely that Southern Wine will be able to rebut this presumption. The Plaintiff claims that the time restriction is reasonable in time and scope given that its industry is highly specialized. The claim is based first on the fact that Mr. Simpkins, by signing the agreement, acknowledged that the duration of the restraint is reasonable. The second basis is that the agreement is reasonable in time and scope because Southern Wine operates in a highly specialized and regulated industry.

Plaintiff offers no authority to support the assertion that a mere signature affixed to a restrictive covenant is dispositive of an agreement being reasonable in time when it is set for a duration of five years. Southern Wine's argument for reasonableness as to time and area of business also rests heavily on the assertion that it operates in a highly specialized industry but it offers no facts to support its argument. Southern Wine calls the wholesale alcohol distribution industry specialized but makes no claims as to any activities, practices, innovations, or technologies that make it proper to claim that the industry is in fact highly specialized. Plaintiff cites the case of *Auto Club Affiliates, Inc., v. Donahey*, 281 So. 2d 239 (Fla. Dist. Ct. App. 1973).

In *Auto Club* the employer sought to enforce a five-year restrictive covenant against a former employee. The employer did assert that the restriction was reasonable in light of the fact that its line of business was highly specialized. There, the employer did business in a special and

9

small niche of insurance sales, auto racing insurance. The employer provided this insurance to a very limited number of auto racetracks throughout the country and his business compiled special data to set its rates. Before his company, no other business offered that type of insurance.

Southern Wine has adduced no proof at all that its industry is as specialized as that of Auto Club's or that its customer base is as limited. Additionally, it has offered no evidence to persuade me that its industry is specialized enough to be considered a niche industry of the type it compares itself to in *Auto Club*. The only legitimate business interests that I find that Southern Wine has a substantial likelihood of establishing is that Mr. Simpkins had access to valuable confidential business information. However, I find that, due to the nature of the wholesale alcohol industry, the valuable confidential business information that Mr. Simpkins was privy to would be stale – and therefore not valuable – within two to six months. Accordingly, Southern Wine has not presented sufficient evidence to warrant the imposition of a preliminary injunction lasting any longer than six months from the time of Mr. Simpkins' resignation – a date which is long passed.

Plaintiff also claims that the covenant is reasonable as to its geographic scope. Again, the claim is based on the idea that since it operates in a highly specialized industry the restrictive covenant validly prohibits Simpkins from competing with it across every state of the Union. Defendant counters that Southern Wine's business is not a truly specialized industry. Defendant also asserts that the restrictive covenant is unreasonable because it restrains Simpkins from working in states and territories in which Southern Wine does not even operate.

As addressed above, given the industries that Southern Wine compares itself to and the cases it cites in support of it being a specialized industry, it is unlikely that a court will find that the geographic scope of the covenant – the entire United States and its territories – to be reasonable. As for the Defendant's second argument, lack of business operations in certain states and territories, it

is also not substantially likely that Southern Wine will be able to defeat this argument. Southern Wine primarily cites *Marshall v. Gore*, 506 So. 2d 91 (Fla. Dist. Ct. App. 1987), to support its claim that the covenant's geographic scope is reasonable. In *Marshall*, the court granted a preliminary injunction in favor of the employer partly on the ground that the employer's restrictive covenant, which prohibited the employee from competing against it in any of the fifty United States was reasonable. There, the employer was a developer and marketer of computer software and sold software programs to dairy farmers. The court found that the employer sold forty-two software programs to dairy farmers in seven states and, very importantly, it ran advertisements for the software in a nationwide dairy publication. The employer's reach truly spanned the bounds of the entire United States and did so with an advertisement that was national in scope, not state-specific.

In this case, witnesses for the Plaintiff have affirmed that the business practices of Southern Wine vary from state to state; the markets are different, the customers are different, and each market's critical information is different. Southern Wine has not offered any evidence of a singular nationwide advertising effort or that it sees the thirty states that it serves as one large singular market. Therefore, based on the above analysis it is not substantially likely that Southern Wine will succeed in showing that the restrictive covenant is reasonable as time, area, and line of business.

5.  *Southern Wine's Alleged Antecedent Breach*

"A party seeking a temporary restraining order must prove that the party has a clear legal right to the relief it requested." *Benemerito & Flores, P.A. v. Roche*, 751 So. 2d, 91 94 (Fla. Dist. Ct. App. 1999). More specifically, "a party is not entitled to enjoin the breach of a contract by another unless he himself has performed what the contract requires under him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity." *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. Dist. Ct. App. 1997). "If the

11

employer wrongfully refuses to pay the employee his compensation, the employee is relieved of any further obligation under the contract and the employer cannot obtain an injunction." *Benemerito & Flores*, 751 So. 2d at 93.

In *Benemerito & Flores*, the court found that the employer materially breached the employment contract simply "by lessening the bonus due to the [employee]." *Benemerito & Flores*, 751 So. 2d at 94. The actual amount of the unpaid bonus – $100,000 – was irrelevant to the question of materiality. The only relevant inquiry was whether the employer had wrongfully withheld the full amount of the bonus payment under the terms of the employee contract. The court agreed that the employer did wrongfully calculate and, thus, wrongfully withheld the total bonus due. Since the full amount had not been paid, the court agreed that the employer had materially breached the employment contract and, as such, could not obtain an injunction.

Mr. Simpkins alleges, as a defense, that Southern Wine committed antecedent breach as it did not pay him the full amount of his bonus as required under the employment contract. He alleges that he was underpaid by at least $293,138. In opposition, Southern Wine argues that even if Simpkins is correct in that he was owed additional monies in bonus, the breach is not material because the $293,138 only constitutes 2.3% of the $12.7 million that he received in 2008-09. In light of *Benemerito & Flores*, it is not substantially likely that Southern Wine will be able to overcome the defense of antecedent breach. As stated earlier, material breach of an employment contract does not rest upon value of the amount underpaid; it rests squarely on whether the full amount due was withheld and whether it was withheld wrongfully. If both questions are answered in the affirmative then the breach was material. Southern Wine has not produced persuasive evidence that the withholding of the bonus was not wrongful. It also does not controvert whether the full amount of the bonus was withheld, but instead chooses to emphasize the idea that even if

the bonus was withheld the amount in controversy was too small to be material. Again, *Benemerito & Flores* makes clear that the amount of the breach is unrelated to the question of materiality. Since Southern Wine fails to address both of the necessary arguments for materiality, it is not substantially likely that Southern Wine will prove that it did not materially breach the employee contract.

C.     *Irreparable Harm*

Plaintiff argues that the Florida statutory standard for showing irreparable harm should prevail in this case in light of the Florida choice of law provision. Under Florida law, the "violation of an enforceable restrictive covenant creates a presumption of irreparable injury," and the non-moving party bears the burden of rebutting that presumption. Fla. Stat. § 542.335(1)(j) (2010). In contrast, Defendant argues that federal law should apply to this issue. Under federal law there is no presumption of irreparable harm. Instead, the movant carries the burden of persuasion as to this element. *Loans of Am. FL, LLC v. Rapid Auto Loans, LLC*, No. 10-60416, 2010 WL 2754336 at *4 (S.D. Fla. July 12, 2010) citing *Church of City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). Specifically, federal law requires the movant to show that "the asserted irreparable harm [is] actual and imminent rather than remote or speculative." *Id*. at 13.

A federal court's authority to issue a preliminary injunction is derived from Federal Rule of Civil Procedure 65, which makes a motion for preliminary injunction a federal procedural issue. "Under the doctrine enunciated in the *Erie* decision and its progeny, federal courts sitting in diversity . . . apply federal procedural law." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002). Since this is a federal diversity action for a preliminary injunction, and a point of federal procedural law is at issue, the burden of proof for irreparable harm must be satisfied under the federal standard. Southern Wine must therefore offer proof of irreparable harm.

The Eleventh Circuit has described irreparable harm as follows:

> The key word in this consideration is "irreparable." Mere injuries, however substantial, in terms of money, time, and injury necessarily expended in the absences of a stay are not enough. The possibility of adequate compensatory or [that] other corrective relief will be available at a later date, in the course of litigation, weighs heavily against a claim of irreparable harm."

*Loans of Am. FL, LLC*, 2010 WL 2754336 at *5.

Southern Wine has not adduced persuasive evidence that any harm it has suffered or will suffer cannot be remedied with other compensatory relief. It is the admitted practice of Southern Wine to hire employees from other competitors, and, in light of that practice, I find it unlikely that Southern Wine is not acquainted with at least a minimal strategic plan for when its own employees are hired away by other competitors. Therefore, I am unconvinced that Southern Wine will suffer irreparable injury if a preliminary injunction is not issued.

### D.     Balancing of the Harms

"The harm considered by the district court is necessarily confined to what might occur in the interval between ruling on the preliminary and trial on the merits." United States v. Lambert, 695 F.2d 536, 540 (11th Cir. 1983). Southern Wine argues that Defendant's leaving will have continued effects over the long term, i.e., continued defection of current employees, and Mr. Simpkins' continued incentive to compete against Southern Wine under his new contract with Young's Market. Mr. Simpkins argues that enforcement of the restrictive covenant will force him into early retirement thereby stripping him of his right to work in the only industry he has known for the last 40 years. He further argues that if the injunction were to issue he would have no new income until at least April 2011, which is the scheduled beginning of trial.

Southern Wine points out that it has lost several employees following Simpkins departure. Deposition testimony shows that fourteen employees have since left after Simpkins. Still, other

deposition testimony indicates that in the wholesale alcohol distribution industry that defection of employees from one competitor to another is quite common and that Southern Wine itself – the top competitor in California – has hired employees from Young's Market as well. These facts are indicative of the fluidity of transfer within this industry and that major competitors remain successful because they foresee the possibility of defection and thus plan for it.

On the other hand, Mr. Simpkins, as a private individual with far fewer resources than a large corporation, is substantially less able to rebound from a loss of business, income or opportunity to work.  He is seventy years old, has no high school diploma, and has worked in only one industry over the past forty years.  At a minimum, it would be difficult for Mr. Simpkins to find an employment opportunity that would enable him to rebound from being forced out of the only industry he has known in his career.  I find then, that the threatened injury to Southern Wine is less than the harm that would be suffered by Mr. Simpkins if the injunction were to issue.

### E.     *Injunction Would Disserve The Public Interest*

Since Southern Wine has not satisfied the irreparable injury and balancing of the harms prongs of the test for awarding a preliminary injunction, it is not necessary to address the public interest prong.

### IV. CONCLUSION

For the reasons explained in this order it is **ORDERED and ADJUDGED** as follows:

1. Southern Wine's Motion for Preliminary Injunction (ECF No. 4) is **DENIED**.

2. Relatedly, the Defendant's Motions for Judicial Notice (ECF Nos. 79 and 119) are **GRANTED**.  The Defendant's Unopposed Motion to Withdraw Eric Dopkins' Declaration from the Public Docket (ECF No. 83) is **GRANTED**.  The Defendant's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 103)

is **DENIED**.  Plaintiff's Motion to Deem Exhibits at Evidentiary Hearing as Filed Under Seal (ECF No. 123) is **GRANTED**.  The Plaintiff's Motion for Leave to Supplement the Preliminary Injunction Record (ECF No. 133) is **DENIED** as moot, and the Plaintiff's Corrected Motion or Leave to Supplement the Preliminary Injunction Record (ECF No. 138) is **GRANTED**.  Defendant's Motion to Submit Supplemental Evidence (ECF No. 164) is **GRANTED**.  Defendant's Motion for Leave to Supplement the Preliminary Injunction Record (ECF No. 178) is **GRANTED**.

3. Additionally, in light of the filing of the Plaintiff's Amended Complaint and the Defendant's Answer to the Amended Complaint, the following motions are **DENIED** as moot:  (a) the Defendant's Motion to Dismiss (ECF No. 30); (b) the Plaintiff's Motion to Dismiss the Defendant's Answer to the Complaint (ECF No. 43); (c) the Plaintiff's Motion for Hearing (ECF No. 44); (d) Plaintiff's Motion for Leave to File a Sur-Reply in Opposition to Defendant's Motion to Dismiss (ECF No. 68); (e) Defendant's Motion to Strike Reply to Response to Motion to Dismiss (ECF No. 72); (f) Defendant's Motion for Oral Argument (ECF No. 120).

**DONE and ORDERED** in chambers, at Miami, Florida, this day of January 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*